Carl Erik KARLSSON and
Lucy C. Karlsson

v.

FEDERAL DEPOSIT INSURANCE COR-
PORATION, and The Prudential Pre-
ferred Properties—Devon Office.

No. 95–3266.

United States District Court,
E.D. Pennsylvania.

May 2, 1996.

Jay D. Barsky, Barsky & Cohen, Bala
Cynwyd, PA, for Plaintiffs.

Alan S. Gold, Tanya M. Sweet, Monaghan
& Gold, P.C., Elkins Park, PA, for Federal
Deposit Insurance Corporation.

Robert B.B. Schatz, Philadelphia, PA, for
The Prudential Preferred Properties.

Lewis A. Grafman, Cozen & O'Connor,
Philadelphia, PA, for Roach Wheeler, Co.,
Third–Party Defendant.

## *MEMORANDUM*

PADOVA, Judge.

### I.  BACKGROUND

Plaintiffs, Carl and Lucy Karlsson, bring
this action under the Pennsylvania Unfair
Trade Practices and Consumer Protection
Law, 73 Pa.Stat.Ann. §§ 201–1—201–9.2
(West Supp.1995) (the "CPL"), for losses al-
legedly resulting from the purchase of their
home.  Currently before the court are De-
fendants' Motions to dismiss pursuant to
Fed.R.Civ.P. 12(b)(6) [1].  For the reasons that
follow, Defendants' Motions will be Granted.

1.  While Defendants have not filed their motions    jointly, their arguments are identical.

Plaintiffs purchased residential real estate (the "Property") from the Federal Deposit Insurance Corporation ("FDIC"). The Property, located in West Chester County, Pennsylvania, consists of an irregularly shaped parcel of land containing an old farm house. FDIC acquired the Property in its takeover of Meritor Savings Bank, which had foreclosed a mortgage on the Property. Defendant Prudential Preferred Properties ("Prudential") is the real estate broker contracted by FDIC to sell the Property.

An agreement of sale was executed between the Plaintiffs and FDIC, and settlement was fixed for January 4, 1994. Some time after executing the agreement of sale, but before settlement, Plaintiffs became suspicious about the size of the lot. On December 17, 1993, Plaintiffs retained Chester Valley Engineers, Inc. ("CVE") to review documents and conduct a survey of the Property. This investigation indicated that while the Property consisted of 1.995 acres, approximately 0.6 acres were located within the public rights of way of three roads. Despite this information, FDIC refused to lower the purchase price for the Property, relying on the agreement of sale which stated that the Property was sold "as is." Plaintiffs went through with the transaction because withdrawal would mean losing their $41,000 down payment.

Plaintiffs filed a Complaint alleging breach of contract and seeking punitive damages. Judge Weiner dismissed the Complaint for failure to state a claim, but granted Plaintiffs leave to amend their Complaint to bring a claim under the CPL. The case was subsequently transferred to my docket. Plaintiffs have now filed their Amended Complaint alleging that advertisements for the Property misrepresented the lot size.

## II. STANDARD OF REVIEW

A claim may be dismissed under Fed. R.Civ.P. 12(b)(6) only if the plaintiff can prove no set of facts in support of the claim that would entitle it to relief. *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir.1994). The reviewing court must consider only those facts alleged in the Complaint and accept all of the allegations as true. *Id.*

## III. DISCUSSION

The CPL makes unlawful "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." 73 Pa.Stat.Ann. § 201–3. The law seeks to place consumers and sellers on a more equal footing. *In Re Smith*, 866 F.2d 576, 581 (3d Cir.1989); *Commonwealth v. Monumental Prop., Inc.*, 459 Pa. 450, 329 A.2d 812, 816 (1974). A liberal interpretation of the CPL best effectuates this purpose. *Monumental Prop., Inc.*, 329 A.2d at 817.

To state a claim under the CPL, the acts alleged in the Amended Complaint must constitute unfair or deceptive acts or practices as the statute defines those terms. *Smith*, 866 F.2d at 583. Section 201–2(4) of the CPL sets out seventeen specific acts which constitute unfair or deceptive acts or practices. Plaintiffs' Reply Memorandum indicates that their claims sound under §§ 201–2(4)(v) and 201–2(4)(ix). Section 2(4)(v) states that the conduct prohibited by the statute includes "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have." Section 2(4)(ix) states that the statute prohibits "advertising goods or services with intent not to sell them as advertised."

In *Commonwealth v. Hush–Tone Indus., Inc.*, 4 Pa.Commw. 1, 1971 WL 13030 (1971), the Pennsylvania Commonwealth Court articulated three elements that a plaintiff must prove in order to state a claim for false advertising under section 201–2(4)(v). The Plaintiff must show: (1) that defendant's advertisement is a false representation of a fact; (2) that it actually deceives or has a tendency to deceive a substantial segment of its audience; and (3) that the false representation is likely to make a difference in the purchasing decision. *Id.* at 21, 1971 WL 13030. Section 201–2(4)(ix) requires the additional element of intent. *See id.* at 24, 1971 WL 13030 (concluding that without evidence that defendants knew their product would not perform as advertised, Commonwealth failed to prove violation of § 2(4)(ix)).

■ The Amended Complaint makes the following allegations of fact.[2] Defendants advertised the Property in local newspapers. One advertisement described the property as consisting of "almost 2 acres." Pls.' Am. Compl. at ¶ 6(a). A second advertisement contained a list of descriptive elements about the property, including an item which reads "acreage 1.90." However, this same advertisement contains text that describes the property as consisting of "almost 2 acres," and further contains a disclaimer that "although deemed accurate, this information is subject to errors, omissions and changes without notice." Pls.' Am.Compl. at ¶ 6(b). Plaintiffs also allege that Defendants published an advertisement with a map depicting the Property and the adjoining roads, but that the map did not indicate that a portion of the advertised property rested beneath the road beds. Pls.' Am.Compl. at ¶ 6(c). Finally, the Property was listed in the Tri–County Multiple Listing Service ("MLS") as consisting of approximately 1.90 acres. However, the MLS listing also contained a disclaimer stating that the information contained in the listing "is accurate but not guaranteed, all dimensions are approximate." Pls.' Am.Compl. at ¶ 6(d).

Plaintiffs incorporate by reference into their Amended Complaint a letter from CVE—whom Plaintiffs hired to review the title documents associated with the Property—confirming that the Property consists of 1.995 acres. Pls.' Am.Compl. at ¶ 11. The letter goes on to state that "the 1.995 acres ... *includes approximately 0.6 acres within the public rights of way.* Pls.' Am.Compl.Ex. E (emphasis added)". It is the existence of these rights of way that give rise to Plaintiffs' claims. Plaintiffs allege that had they known of the public rights of way, they would not have entered into the agreement of sale. Pl'. Am.Compl. at ¶ 20.

Accepting all of Plaintiffs' allegations as true, it is apparent that they have failed to state a claim for false advertising under the CPL. Plaintiffs have not articulated any misrepresentation of fact contained in Defen-

dants' advertising, and the letter from CVE confirms that the Property does, in fact, consist of approximately 2 acres. Plaintiffs do not allege that Defendants made any representations regarding easements or public rights of way on the Property, or that "acreage," as that term is used in the advertisements, was represented by defendants to refer only to unencumbered land. Additionally, the agreement of sale placed the onus of discovering any defects or exceptions to the title squarely on Plaintiffs. Pls.' Am. Compl.Ex. E1 ¶ 4.

My decision today is in accord with Judge Weiner's Memorandum dismissing Plaintiffs' first Complaint. Judge Weiner found that the qualified language of the advertisements, and the accompanying disclaimers, "certainly put plaintiffs on notice that the information provided to them was qualified and that the acreage was an estimate." Judge Weiner went on to conclude that "the contract's explicit recital that the property was sold 'as is', and the fact that they were to receive only a quitclaim deed, should have placed [Plaintiffs] on notice that they were assuming any risk associated with the transaction." *Karlsson v. Federal Deposit Ins. Corp.*, No. 95–CV–3266, slip op. at 5–6, 1996 WL 37830 (E.D.Pa. Jan. 29, 1996).

Plaintiffs have failed to allege any misrepresentation of fact contained in Defendants' advertising. The Property is as it was advertised to be. Plaintiffs were provided sufficient opportunity to examine the title to the Property, and failed to do so in a timely manner as required by the contract. Under the circumstances of this case, Plaintiffs' Amended Complaint must be dismissed.

An appropriate Order follows.

### ORDER

AND NOW, this 2nd day of May, 1996, upon consideration of Defendant Prudential Preferred Properties' Motion to Dismiss (Doc. No. 21), and Defendant Federal Deposit Insurance Corporation's Motion to Dismiss (Doc. No. 22), and Plaintiffs' Response there-

---

2. The agreement of sale and other documents referred to in this Memorandum are attached as exhibits to the Amended Complaint and are therefore deemed part of the pleadings for purposes of this analysis. *See* Fed.R.Civ.P. 10(c).

to (Doc. No. 23), and Defendant Federal Deposit Insurance Corporation's Reply (Doc. No. 24), and Defendant Prudential Preferred Properties' Reply (Doc. No. 25), and Plaintiffs' Counter Reply (Doc. No. 26), and Defendant Federal Deposit Insurance Corporation's Supplemental Memorandum (Doc. No. 27), IT IS HEREBY ORDERED THAT:

1. Defendant Prudential Preferred Properties' Motion is GRANTED;

2. Defendant Federal Deposit Insurance Corporation's Motion is GRANTED;

3. Plaintiff's Amended Complaint (Doc. No. 19) is DISMISSED;

4. The Clerk of the Court shall mark this case CLOSED.